IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **MARTHA F. OWENS, Individually, and as the Executrix of the Estate of Andrew T. Fuller; SUSAN ROCKETT; DONALD ABNER POPE JR.; and REFUSE MATERIALS, INC.,** | |
| Plaintiffs, | Civil Action No. 7:12-CV-144 (HL) |
| v. | |
| **STIFEL, NICOLAUS & COMPANY, INC. and ANTHONY JOHN FISHER,** | |
| Defendants. | |

## ORDER

This case is before the Court on Defendant Stifel, Nicolaus & Company, Inc.'s Motion to Exclude Certain Testimony of Plaintiffs' Proffered Expert Gregory B. Wood (Doc. 50). For the reasons discussed below, the motion is granted.

## I.    BACKGROUND

This is a securities investment case. Plaintiffs allege that Defendants Stifel and Fisher solicited substantial capital investments from them for a company known as Cardiac Network, Inc. ("CNI"). Plaintiffs contend that Fisher had an insider status in CNI which was never disclosed to Plaintiffs, but was known to Stifel. Plaintiffs ultimately suffered severe financial losses on their CNI transactions. Plaintiffs allege that Defendants defrauded them and were negligent in a number of ways.

During discovery, Plaintiffs and Stifel both disclosed expert witnesses. One expert disclosed by Plaintiffs is Gregory B. Wood, a consultant with Securities Litigation Support, LLC. Mr. Wood intends to express opinions on a number of topics, including securities industry rules and standard practices and procedures, the securities industry suitability requirement, speculative securities, undisclosed business interests, selling away, securities industry compliance rules, and securities industry supervision. Stifel has moved to exclude two portions of Mr. Wood's intended testimony.

## II.   DISCUSSION

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Federal Rule of Evidence 702. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Under Rule 702, relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (citation omitted). "The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science." Daubert, 509 U.S. at 589-90 (quoting Fed.R.Evid. 702) (footnote omitted).

When evaluating the reliability of scientific expert opinion, the trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. To evaluate the reliability of scientific expert opinion, the court considers, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique, and (4) whether the technique is generally accepted in the scientific community. Quiet Tech. DC-8, Inc. v. Hurel-

Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (citing McCorvey, 298 F.3d at 1256). These factors are illustrative, not exhaustive.

The Daubert principles apply not only to testimony based on "'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Clark v. Takata Corp., 192 F.3d 750, 758 (7th Cir. 1999) ("In determining whether an expert's testimony is reliable, the Daubert factors are applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion merely on 'experience' or 'training.'")  When an expert testifies about an opinion which is based on experience, training, or education, and not upon the scientific method, the court may allow the opinion if it finds the opinion sufficiently reliable. United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Kuhmo Tire, 526 U.S. at 151-52). The proponent of such an opinion must "explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." Id. at 1265.

In addition, expert testimony must assist the trier of fact. Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. See United States v. Rouco, 765 F.2d 983, 995 (11th Cir.

1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262-63.

In applying Rule 702, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing <u>Daubert</u>, 509 U.S. at 589). "District courts are charged with this gatekeeping function to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" <u>Id.</u> (internal quotation marks omitted). Of course, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." <u>Quiet Tech.</u>, 326 F.3d at 1341 (citation and internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596. The proponent of the expert testimony bears the burden of laying the proper foundation for the admission of the testimony, and admissibility must be shown by a preponderance of the

evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) (citation omitted).

As noted above, Stifel challenges two portions of Mr. Wood's intended testimony. The first is Mr. Wood's opinion that an investigation into Fisher's trading activity in the Owens and Fuller Estate accounts could have revealed Fisher's outside business interest and prevented the financial damage that occurred in Plaintiffs' accounts. Stifel contends that this opinion is nothing more than speculation and conjecture. The other challenged testimony concerns securities industry suitability requirements and penny stock transactions. Stifel contends that this testimony is irrelevant, and therefore would not assist the trier of fact in determining a fact at issue.

### A.   Opinion Regarding an Investigation into the Owens and Fuller Estate Accounts

Mr. Wood has provided three expert reports and has been deposed. In his second expert report, dated October 16, 2013, he opines:

> Between October 2009 and December 2011, the Owens and Fuller Estate accounts were examined, due to unusual activity, multiple times by Stifel Compliance and Management. These occurrences should have had a cumulative impact on Stifel's supervision of Fisher and the protection of the Plaintiffs' assets. The issues were mostly the same, very high turnover in Growth & Income objective accounts. This should have resulted in an investigation that could have revealed Fisher's outside business interest and prevented the financial damage that occurred in the Plaintiffs' accounts.

(Doc. 50-3 at 8).

> Such action should have caused the firm to investigate the situation and take corrective action. This could have prevented Fisher from offering the private securities transactions that damaged Stifel Nicolaus and their clients.

(Doc. 50-3 at 11).

> Proper follow-up of these problem indicators could have caught Fisher's outside business activity before Stifel or their clients were damaged.

(Doc. 50-3 at 11).

> Stifel's investigation of the Owens account could have revealed Fisher's outside business interest with Cardiac Network in addition to issues linked to the suitability of his trading activities with his 79 year-old client.

(Doc. 50-3 at 15).

When questioned about his opinion that an investigation into the accounts could have or would have revealed Fisher's outside business interests, Mr. Wood testified as follows:

> Q:    But then you say it's very high turnover. You say this should have resulted in an investigation that could have revealed Fisher's outside business interest and prevented the financial damage that occurred in the plaintiffs' accounts. What assumptions are you making that an inquiry into high turnover would have revealed outside business interests?
>
> A:    This occurs in accounts - - I'm making no - - I've been in the business a long time. I've seen this occur in accounts when brokers need the money.

Q:      When brokers what?

A:      Need the money. Going back to my prehire assessment that he was a high-risk hire it looked - - he appeared to me like a broker who probably was one who - - he was a high-risk broker. He was a guy who was underfinanced from an assets under management perspective and he was a broker who didn't have managed money. So he was a risk, in my opinion, for turnover, high turnover situations. He would be a high turnover possibility. And as we moved ahead six months we saw, you know, with the Owens and Fuller accounts that, in fact, this happened that he was very aggressive for those accounts.

And I think - - and I think if the branch manager had examined the situation and examined Fisher's - - my assumption is that Fisher may have needed money. And if Fisher's situation - - and examined him and circumstances and gotten to know him better and maybe spent more time with him and I - - and there's nothing in the documents that said he did or didn't either way. But I think - - I think coaching and counseling, understanding the broker would have probably brought some of this to light.

Q:      Okay. Would have probably brought what to light? The fact of the high trading act - - they knew about the high trading activity.

A:      Yes. Probably would have - - you probably would have understood Mr. Fisher better and as you would have understood Mr. Fisher better could have brought to light the fact that there was something else going on in Mr. Fisher's life.

Q:      You're saying it's possible they could have found that out?

A:      That's right.

8

Q:     Now the - -

A:     The road signs were there is what I'm trying to say.

(Doc. 50-6 at 6-8).

Stifel argues that the Court should exclude Mr. Wood's opinion that an investigation into Fisher's trading activity could have revealed his outside business interest and prevented the financial damage that occurred in Plaintiffs' accounts. Stifel points out that the Owens and Fuller accounts were subjected to a number of inquiries by Stifel Compliance and Management, that a broker review of Fisher was conducted, that letters detailing account activity and requesting acknowledgment were sent to Plaintiff Owens, and that Stifel's branch manager had many conversations with Plaintiff Owens about the account activity. According to Stifel, none of this activity resulted in Stifel discovering Fisher's outside business interests. Stifel argues that Mr. Wood's contention that additional follow up or investigation could have revealed those interests and prevented the losses in nothing more than conjecture and speculation and is not based in fact.

In response, Plaintiffs dispute Stifel's characterization of Mr. Wood's opinion as speculation with no factual support. They state that Mr. Wood does not simply opine that Stifel "probably would have" discovered Fisher's outside business activities had it conducted an investigation, but instead he testified that

Stifel should have conducted an investigation into Fisher and "an appropriate investigation would have revealed Fisher's relationship with CNWI." Plaintiffs interpret Stifel's argument as one asking the Court to interpret the evidence and find that Stifel acted appropriately. Plaintiffs contend that Mr. Wood is entitled to make reasonable references based on fact and his experience, and the proper means to attack his credibility is through cross-examination at trial.

With respect to expert opinions, the law is clear that an opinion that is speculative or conjectural does not satisfy Rule 702. *See* Daubert, 509 U.S. at 590 ("'[K]knowledge connotes more than subjective belief or unsupported speculation.") Thus, "proffered expert testimony should be excluded if it is speculative or conjectural." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (internal quotation marks omitted). The Court agrees with Stifel that Mr. Wood's ultimate opinion on this point - that further investigation into Fisher's trading activity could have revealed Fisher's outside business interest and prevented the financial damage to Plaintiffs' accounts - amounts to "no more than 'subjective belief or unsupported speculation.'" Weisgram v. Marley Co., 169 F.3d 514, 521 (8th Cir. 1999), *aff'd,* 528 U.S. 400 (2000) (quoting Daubert, 509 U.S. at 590). Contrary to what Plaintiffs contend, Mr. Wood never states in his reports or deposition that an appropriate investigation would have revealed Fisher's relationship with CNWI. Instead, his

opinions refer to nothing more than "could haves," and such speculation is not admissible. Of course, Mr. Wood can still testify that in his opinion, Stifel should have investigated Fisher's trading activity more thoroughly based on the various purported red flags he discusses in his report and deposition, but he will not be allowed to go a step further and opine that the investigation could have uncovered the business interests and stopped the losses.

### B. Opinions Regarding Securities Industry Suitability Requirements and Penny Stock Transactions

Stifel also seeks to preclude Mr. Wood from testifying with respect to securities industry suitability requirements and penny stock transactions. Stifel contends that this testimony should be excluded because his proposed opinions on these issues would not assist the trier of fact in determining a fact at issue in the case.

In response, Plaintiffs merely state in a conclusory fashion that the testimony is relevant and will help the trier of fact contextualize the issues, and that the rules are relevant.

It is Plaintiffs' burden to lay the proper foundation for the admission of the expert testimony and show admissibility by a preponderance of the evidence. Allison, 184 F.3d at 1306. Plaintiffs have not specified or articulated how the penny stocks and suitability rules relate to any issue in the case or how they will be helpful to the trier of fact. Plaintiffs' conclusory assertion that Mr. Wood's

testimony is relevant and helpful does not carry their burden. Any testimony from Mr. Wood with respect to suitability requirements and penny stock transactions is excluded.

## III.   CONCLUSION

For the reasons discussed above, Defendant Stifel, Nicolaus & Company, Inc.'s Motion to Exclude Certain Testimony of Plaintiffs' Proffered Expert Gregory B. Wood (Doc. 50) is granted. Mr. Wood will not be permitted to offer opinions with respect to securities industry suitability requirements or penny stock transactions. He further will not be allowed to opine that investigation by Stifel could have resulted in the discovery of Fisher's outside business activities and could have prevented Plaintiffs' losses.

**SO ORDERED**, this the 11th day of March, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh