IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| MARTHA F. OWENS, Individually, and as the Executrix of the Estate of Andrew T. Fuller; SUSAN ROCKETT; DONALD ABNER POPE JR.; and REFUSE MATERIALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STIFEL, NICOLAUS & COMPANY, INC. and ANTHONY JOHN FISHER, <br><br> Defendants. | Civil Action No. 7:12-CV-144 (HL) |

## ORDER

This case is before the Court on Defendant Stifel, Nicolaus & Company, Inc.'s ("SNC") Motion for Summary Judgment as to All Claims by Plaintiff's Donald Abner Pope, Jr. ("Pope") and Refuse Materials, Inc. ("RMI"). (Doc. 58). After reviewing the pleadings, briefs, affidavits, depositions, and other evidentiary materials presented, and determining that there is no genuine dispute of the material facts relating to Plaintiffs' claims against SNC, the Court finds that SNC is entitled to judgment as a matter of law and GRANTS Defendant's motion.

I.  **FACTS**

Defendant SNC is a securities broker-dealer firm. SNC employed Defendant Anthony John Fisher ("Fisher") from April 2009 until February 8, 2012. (DSOMF ¶ 1).[1] SNC terminated Fisher for violating company policy by engaging in private transactions outside the firm, or "selling away." (DSOMF ¶¶ 36-38).

Plaintiff Pope is a partial owner and secretary of Plaintiff RMI, located in Ocilla, Georgia. (DSOMF ¶ 2; Pope Dep. pp. 5-6). Pope owns the company along with his father, Donald Pope, Sr., who is not a party to this action. (Pope Dep., p. 7). RMI is an S corporation operating a floor installation business valued at around one million dollars. (First Am. Compl. ¶ 4; DSOMF ¶ 4; Pope Dep., p. 7; Roberts Dep., p. 19). RMI maintains investment accounts. (Pope Dep., p. 8). Pope handles all of RMI's investment decisions, including the investments that are the source of the pending litigation. (DSOMF ¶ 5; Pope Dep., pp. 8-10).

Fisher first contacted Pope sometime around June or July 2011. (DSOMF ¶ 11; Pope Dep. pp. 36, 40). Fisher obtained Pope's contact information from Hugh Roberts ("Roberts"). (DSOMF ¶ 7; Roberts Dep. p. 46). Fisher and Roberts became acquainted with one another in approximately 1998 through a common client. (DSOMF ¶ 9; Roberts Dep., pp. 44-45). Roberts is a certified public accountant who serves both Pope individually and RMI and who Pope has known since he was a small child. (DSOMF ¶ 7; Pope Dep. pp. 36-37; Roberts

---

[1] "DSOMF" refers to Defendant's Statement of Material Facts. The cited paragraphs are those admitted by Plaintiff.

Dep. p. 19). Fisher introduced himself to Pope as an employee of SNC. (Pope Dep. p. 40).

Fisher approached Pope to solicit an investment in Cardiac Network, Inc. ("CNI"), a medical technology company working to develop a new cardiac monitoring device. (Wolensky Decl., Ex. D). Fisher provided Pope materials outlining CNI's business plan. (Pope Dep., p. 39). At some point Fisher insinuated that he would be on the board of CNI but never explained his direct relationship with CNI to Pope. (Pope Dep., p. 41).

After several conversations with Fisher about a potential investment, and after discussing the decision with his father, Pope, on behalf of RMI, agreed to invest $270,000 in CNI. (DSOMF ¶ 13; Pope Dep., pp. 38-39). Pope made no personal investment in CNI. (DSOMF ¶ 27; Pope Dep., p. 10). Pope inquired whether RMI needed to set up an SNC account. (Pope Dep., p. 40). Fisher told Pope an SNC account was not necessary. (Pope. Dep., p. 40). Neither Pope nor RMI ever established investment accounts at SNC. (DSOMF ¶ 32; Pope Dep., pp. 8-9, 41; Pope's Resp. to First Req. for Admis., Req. 1; RMI's Resp. to First Req. for Admis., Req. 1). Fisher is the only SNC employee with whom Pope communicated about investing in CNI. (DSOMF ¶ 35; Pope Dep., p. 40).

Fisher explained to Pope how the investment would work, including where to wire the money. (Pope Dep., p. 17). He directed Pope to communicate with Judy Crowhurst, who was involved in CNI's business development, about the

other specifics of the investment. (Pope Dep., p. 14). On August 17, 2011, Judy Crowhurst emailed Keisha Davis, an employee of RMI, attaching a sample convertible note, a securities purchase agreement, and wiring instructions. (Pope Dep., Ex. 3). On August 18, 2011, Keisha Davis returned a completed Accredited Investor Questionnaire to Judy Crowhurt. (Pope Dep., Ex. 3). Keisha Davis filled out the questionnaire on behalf of Pope and RMI, and Pope signed the form. (Pope Dep. p. 20, Ex. 3). That same day, Pope, after reading the contents of the proposed agreement, executed a Securities Purchase Agreement, entered into exclusively between RMI and CNI. (DSOMF ¶¶ 13, 16; Pope Dep., p. 19, Ex. 4). The Securities Purchase Agreement specifically states that the agreement was not effected by or through a broker-dealer in a public offer. (DSOMF ¶ 17; Pope Dep., Ex. 4). Fisher played no role in managing any account owned by Pope or RMI. (RMI's Response to First Interrogs., Interrog. 2).

Then, at the direction of Fisher, Pope wired $270,000 on August 18, 2011 from an RMI account at Colony Bank to an escrow account managed by the Law Offices of Brandon S. Chabner. (DSOMF ¶ 14; Pope Dep. pp. 16-17, Ex. 3). In exchange, RMI received a convertible promissory note from CNI. (DSOMF ¶ 20; Pope Dep., Ex. 6). The agreement bears the signature of Brian Calhoun, the president of CNI. (Pope Dep., Ex. 6). By the terms of the note, RMI invested $270,000 for a period of six months. When the note came due on February 18, 2012, RMI was to receive ten percent interest and 27,000 shares of CNI stock.

4

(DSOMF ¶ 20; Pope Dep., Ex. 6). RMI never received the stock certificates from CNI or any other return on its investment. (DSOMF ¶¶ 21, 28; Pope Dep., p. 24).

In October 2011, Judy Crowhurst began communicating with Keisha Davis about RMI making a second investment in CNI. (Pope Dep., Ex. 7). Fisher, likewise, started calling Pope daily, purportedly from his SNC office. (Pope Dep., p. 28). Fisher explained to Pope that the second investment was for paying the patent filing fees. (Pope Dep., p. 27). Fisher alternatively stated that the funds were intended for CNI's purchase of intellectual property from Dennis Montgomery at Pacific Coast Innovations. (Pope Dep., p. 27, 35-36).

Despite his misgivings and the contradictory information Pope received from Fisher, Pope entered into a second Securities Purchase Agreement with CNI for $75,000 on November 14, 2011. (DSOMF ¶ 23; Pope Dep., pp. 28-33). The second agreement contains the same language as the first regarding the lack of involvement of a broker-dealer in a public offering. (DSOMF ¶ 24; Pope Dep., Ex. 10). Pope wired the $75,000 to the Law Offices of Brandon S. Chabner on November 14, 2011 (DSOMF ¶ 22; Wolensky Declr., Ex. D). RMI then received a convertible promissory note from CNI due May 14, 2012 in the amount of $75,000, promising ten percent interest and 15,000 shares of CNI stock. (DSOMF ¶ 26; Pope Dep., Ex. 9).

CNI failed to repay RMI according to the terms of either promissory note. (DSOMF ¶ 28; Pope Dep., p. 30). Nor did CNI issue the promised stock certificates. (DSOMF ¶ 21; Pope Dep., p. 31).

Plaintiffs Pope and RMI filed their First Amended Complaint on August 8, 2013, alleging Defendant SNC is liable for damages resulting from fraud and misrepresentation of the investment potential in CNI and negligent or negligent *per se* in the hiring and supervision of Defendant Fisher. (Doc. 27). Plaintiffs further claim that SNC's alleged wilful and wanton misconduct gives rise to liability for punitive damages under O.C.G.A. § 51-12-5.1. Defendant moves for judgment in its favor on all claims asserted by these Plaintiffs.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a

showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986))."If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III. ANALYSIS

### A. Fraud

Plaintiffs allege in their First Amended Complaint that Defendant fraudulently and materially misrepresented the investment potential in CNI and provided false counsel. (Doc. 27). Plaintiffs also claim that in providing false counsel regarding investment in CNI, Defendant intended to induce Plaintiffs to rely on this misinformation to their detriment. (Doc. 27). Under Georgia law, to prevail on a fraud claim Plaintiffs must set forth evidence of five elements: (1) a false representation by Defendant; (2) scienter; (3) Defendant's intention to induce Plaintiffs to act or refrain from acting; (4) justifiable reliance by Plaintiffs on the representation; and (5) damages to Plaintiffs. Johnston v. Correale, 272 Ga. App. 502, 504 (2005). Here, there is no evidence that SNC made any representation to these particular Plaintiffs, false or otherwise. See Alexander v. A. Atlanta Autosave, Inc., 272 Ga. App. 73, 75 (2005) (fraud claim failed where plaintiff had no direct contact with defendant and where there was no evidence that defendant made any representation upon which plaintiff relied). Accordingly, Plaintiffs' fraud claims must fail as a matter of law.

#### 1. Actual Authority

In order for Plaintiff's fraud claim to survive summary judgment, there must be some evidence that Fisher had either actual or apparent authority to solicit new investors for CNI on behalf of SNC. "The relationship of principal and agent

arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another on his behalf." O.C.G.A. § 10-6-1. A principal is bound only by the acts of an agent acting within the scope of his authority. Gymco Constr. Co. v. Architectural Glass & Windows, Inc., 884 F.2d 1362, 1366 (11th Cir. 1989). The actions of the principal create the agency relationship. Satisfaction & Serv. Housing, Inc. v. SouthTrust Bank, Inc., 283 Ga. App. 711, 713 (2007).

Despite Plaintiffs' protestations to the contrary, the record contains no evidence that Fisher had actual authority to arrange transactions between RMI and CNI. SNC maintains a Compliance Policies and Procedures Manual that conforms with Financial Industry Regulatory Authority ("FINRA") rules regarding outside business activity: "Employees are not permitted to engage in private securities transactions . . . whether or not there is compensation paid for effecting the transaction unless approved, in writing, by the Compliance Director or his/her designee. This includes a personal investment as well as playing *any* role in the investment." (Wolensky Decl., Ex. E; DSOMF ¶37) (emphasis added). The policy manual defines "private securities transactions" as "any securities transaction outside the regular course or scope of an employee's employment." (Wolensky Decl., Ex. E; DSOMF ¶ 38).

Sometime around May 2011, Fisher completed a referral form recommending CNI to SNC. (Honovich Dep., p. 20). That request then went to

9

John Honovich, a managing director and investment banking liaison with SNC. (Honovich Dep., p. 9). Honovich and his colleague Lauren Harrington conducted a telephone conference on May 11, 2011 with Brian Calhoun and Judy Crowhurst of CNI to learn more about the company and to determine whether SNC would be interested in further assisting CNI in attracting additional investment capital. (Honovich Dep., p. 11-12). At the conclusion of the thirty minute conversation, SNC declined to invest any further resources in promoting CNI. (Honovich Dep., p. 41-43). SNC did not move forward in conducting due diligence because the company decided to turn down the opportunity and not to sell any CNI stock. (Honovich Dep., p. 70-72).

Fisher approached Pope about RMI investing in CNI just a few weeks following SNC's decision not to promote CNI, in June or July of 2011. Fisher had no actual authority to do so. Fisher's actions in soliciting an entity that was not a client of SNC to invest in a company SNC specifically decided not to endorse is the very definition of "selling away" and clearly placed him outside the scope of his employment with SNC. Plaintiffs' own expert concurs that Fisher violated SNC policy by peddling CNI. (Report of Gregory B. Wood, p. 4).

### 2.   Apparent Authority

Since there is no evidence that Fisher as an agent of SNC had actual authority to entice RMI to invest in CNI, the Court next must analyze whether SNC cloaked Fisher with apparent authority to conduct the transactions in

question. To recover under the theory of apparent authority, Plaintiffs must point to evidence that "(1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury." Fortune v. Principal Financial Group, Inc., 219 Ga. App. 367, 370 (1995) (citations and punctuation omitted). "Apparent authority is that which the principal's conduct leads a third party reasonably to believe the agent has." Bresnahan v. Lighthouse Mission, 230 Ga. App. 389, 391 (1998). There must be evidence of more than a plaintiff's belief that there is an agency relationship. Fortune, 219 Ga. App. at 370. "In other words, 'apparent authority is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which have led the third party to believe reasonably the agent had such authority.'" Holy Fellowship Church of God in Christ v. Brittain, 240 Ga. App. 436, 438 (1999); see also Ellis v. Fuller, 282 Ga. App. 307, 309 (2006) (holding that evidence of a mere assumption of agency has no probative value and is insufficient to find agency exists). Further, an "agent's success in misleading the third party as to the existence of actual authority does not in itself make the principal accountable." Restatement (Third) of Agency § 2.03, cmt. c (2006).

An agent who exceeds the scope of his authority does so at his own risk; however, the principal may later affirm or ratify the agent's actions. O.C.G.A. §§ 10-6-21 and 10-6-51. In order for ratification to be effective, "the principal

11

must know of the agent's act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act." Bresnahan, 230 Ga. App. at 392.

The record contains no evidence that SNC made any representation to either Pope or RMI regarding Fisher's authority to invite RMI to invest in CNI. In fact, Plaintiffs have produced no evidence that SNC even knew these Plaintiffs existed. Neither Pope nor RMI maintained an investment account with SNC. The only connection between the parties is Fisher. Plaintiffs contend that SNC vested Fisher with apparent authority on the premise of Fisher's employment as a broker for SNC and the issuance of an SNC e-mail account and telephone number that Fisher allegedly used on occasion to contact Plaintiffs. Plaintiffs further state that in deciding to invest in CNI, RMI relied on Fisher's status as an SNC employee. Plaintiffs' conduct and admissions belie those assertions.

In his deposition, Pope testified that Fisher contacted him about RMI making an investment upon a recommendation received from Hugh Roberts, who served as an accountant for both Pope and RMI. Pope testified during his deposition that Fisher identified himself as an employee of SNC. He called from what Pope believed to be an SNC telephone line and e-mailed Pope on at least one occasion from an SNC e-mail address. However, neither Pope nor RMI ever established an account with SNC, signed any form of contract with SNC, or interacted with any other employee of SNC. Pope once asked Fisher whether

RMI needed to open an SNC account. Fisher told him no, and there is no evidence that Pope inquired further. The purchase agreement signed by Pope on behalf of RMI was entered into exclusively between RMI and CNI, with no mention of SNC. SNC provided no documentation to RMI or Pope about CNI. All documentation about CNI originated through CNI and conversations and e-mail exchanges with CNI employees. While Fisher facilitated the transactions with RMI and CNI, Plaintiffs point to no evidence that RMI relied on any investment advice from Fisher other than his original pitch about CNI. Even when Pope began to doubt the soundness of RMI's investment in CNI, Pope agreed to sign a second note for $75,000 without receiving further advice from any party. In short, Pope ultimately engaged in investment decision making on behalf of RMI based on instinct and on the recommendation of Hugh Roberts, not on any representation by SNC. See Fortune, 219 Ga. App. at 370 (no apparent authority where evidence showed plaintiffs invested based on reputation of the insurance agent in their common church and the agent's representation as to his authority).

The parties do not dispute that RMI ultimately invested and lost $ 345,000 in its dealings with CNI. However, Plaintiffs have presented no evidence linking SNC or any representation made by SNC to that loss. SNC did not vest Fisher with any authority, actual or apparent, to solicit outside investment in CNI. Additionally, SNC received no benefit from the investment and did not profit in any way from Fisher's unauthorized activity such that SNC can be said to have

13

ratified Fisher's actions. Accordingly, the Court grants Defendant's motion for summary judgment on the issue of fraud.

### B.     Negligence and Negligence Per Se

Plaintiffs next set forth a claim that Defendant breached its duty to exercise reasonable care in investigating CNI, offering investment advice, and monitoring the health and viability of the company. (Doc. 27). Plaintiffs additionally assert that SNC owed them a duty to adequately supervise, train, and monitor the actions of its agent, Fisher. (Doc. 27). Defendant's failure to exercise reasonable care, therefore, was the proximate cause of Plaintiffs' ultimate financial loss.

A negligence claim is predicated on a finding that the actor owes a duty to the complaining party. CSX Transportation, Inc. v. Williams, 278 Ga. 888, 889 (2005); Oswell v. Nixon, 275 Ga. App. 205, 207 (2005) ("An essential element of a tort claim is the existence of a duty owed by the defendant to the purported plaintiff.") Stock brokers must exercise good faith in executing their duty to their clients to make known all material facts concerning a transaction. Minor v. E.F. Hutton & Co., 200 Ga. App. 645, 647 (1991); see also Glisson v. Freeman, 243 Ga. App. 92, 99 (2000). However, that duty only "extends to those persons, or the limited class of persons who the professional is actually aware will rely upon the information prepared." Badishce Corp. v. Caylor, 257 Ga. 131, 133 (1987). An employer is not liable for the tortious acts of an employee where the employee veers outside the scope of his employment. Drury v. Harris Ventures,

["

Inc., 302 Ga. App. 545, 546-47 (2010) (held that summary judgment is appropriate where agent on a private enterprise). "The question of whether the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases." Id.

The Court finds that summary judgment in favor of SNC on issue of negligence is appropriate as to Plaintiffs Pope and RMI. Plaintiffs have failed to establish that SNC owes a duty to exercise any degree of care toward non-clients. As discussed above, the Court finds the evidence indisputable that Fisher was acting outside the scope of his employment when he approached RMI about investing in CNI. Thus, Plaintiffs' negligence claim fails as a matter of law.

**B.    Punitive Damages**

Under Georgia law, punitive damages may be awarded "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed wilful misconduct, malice, fraud, wantoness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. Punitive damages cannot be awarded when there are no actual damages. Morris v. Pugmire Lincoln Mercury, Inc., 283 Ga. App. 238, 241 (2007). The Court already determined that Plaintiffs' fraud claims fail as a matter of law. Further, there is no evidence that SNC acted in any manner toward these two Plaintiffs, who were

not clients of SNC and who were impacted solely by an employee who violated the brokerage firm's policies and strayed from the course of his employment. Since Plaintiffs cannot recover for their underlying tort claims, their prayer for punitive damages likewise must fail.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 58) for all claims raised by Plaintiffs Pope and RMI is granted.

**SO ORDERED** this 5th day of June, 2014.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks